UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

R.T.G. FURNITURE CORP.,

    Plaintiff,

v.                                                           CASE NO.:

HALLMARK SPECIALTY
INSURANCE COMPANY, CRUM &
FORSTER SPECIALTY INSURANCE
COMPANY, EVEREST INDEMNITY
INSURANCE COMPANY,
IRONSHORE SPECIALTY
INSURANCE COMPANY, HDI
GLOBAL SPECIALTY SE,
UNDERWRITERS AT LLOYD'S,
LONDON SUBSCRIBING TO
POLICY NO. LMPRP20928555,
PARTNERRE IRELAND INSURANCE
DAC, STARR SURPLUS LINES
INSURANCE COMPANY,
EVANSTON INSURANCE
COMPANY, ASPEN SPECIALTY
INSURANCE COMPANY,
LANDMARK AMERICAN
INSURANCE COMPANY, MAXUM
INDEMNITY COMPANY, AND
HOMELAND INSURANCE
COMPANY OF NEW YORK,

    Defendants.

_____/

## PLAINTIFF'S COMPLAINT AND DEMAND FOR JURY TRIAL

    Plaintiff R.T.G. Furniture Corp. brings this action against Defendants, Hallmark

Specialty Insurance Company, Crum & Forster Specialty Insurance Company, Everest

Indemnity Insurance Company, Ironshore Specialty Insurance Company, HDI Global

Specialty SE, Underwriters at Lloyd's, London Subscribing to Policy No. LMPRP20928555, PartnerRe Ireland Insurance dac, Starr Surplus Lines Insurance Company, Evanston Insurance Company, Aspen Specialty Insurance Company, Landmark American Insurance Company, Maxum Indemnity Company, and Homeland Insurance Company of New York (collectively, the "Defendants" or "Insurers").

## <u>NATURE OF THE ACTION</u>

1.      This is a breach of contract and declaratory judgment action that arises out of the Insurers' refusal to honor business interruption coverage provided by their insurance policies issued to R.T.G. Furniture Corp.

2.      R.T.G. Furniture Corp. is a furniture retailer that, together with its additionally insured affiliates ("Rooms To Go"), operates over 150 stores in Alabama, Florida, Georgia, Louisiana, Mississippi, North Carolina, South Carolina, Tennessee, Texas, and Virginia.

3.      Beginning in March 2020, Rooms To Go was forced to close many of its stores because of coronavirus, COVID-19, and various related government closure orders. The monetary loss associated with these closures was substantial.

4.      Rooms To Go incurred unavoidable losses while its stores were closed or significantly restricted.

5.      Rooms To Go purchased insurance from numerous carriers to ensure that monetary relief was available if the company suffered business interruption caused by an unavoidable event such as the spread of coronavirus and COVID-19.

6.      The Insurers sold insurance policies to Rooms To Go in which they agreed to cover all risks of direct physical loss of or damage to property, including the loss of business income and associated extra expense.  Yet now that Rooms To Go has submitted a claim falling within that coverage, the Insurers have refused to honor their contractual obligations by refusing to make any payment under their policies.

## PARTIES

7.      Plaintiff, R.T.G. Furniture Corp., is a Florida corporation with its principal place of business at 11540 E. U.S. Highway 92, Seffner, Florida, 33584.  R.T.G. Furniture Corp. is the named insured under the insurance policies issued by the Defendants covering Rooms To Go.

8.      Defendant, Hallmark Specialty Insurance Company ("Hallmark"), is an Oklahoma corporation with its principal place of business in Dallas, Texas.  Hallmark is authorized to sell insurance in the state of Florida and, on information and belief, is actively engaged in the business of selling insurance both in Hillsborough County and throughout the state of Florida.  Hallmark issued the subject insurance policy to Rooms To Go at Rooms To Go's principal address in Seffner, Florida.

9.      Defendant, Crum & Forster Specialty Insurance Company ("Crum & Forster"), is a Delaware corporation with its principal place of business in Morristown, New Jersey.  Crum & Forster is authorized to sell insurance in the state of Florida and, on information and belief, is actively engaged in the business of selling insurance both in Hillsborough County and throughout the state of Florida.  Crum & Forster issued the

subject insurance policy to Rooms To Go at Rooms To Go's principal address in Seffner, Florida.

10.     Defendant, Everest Indemnity Insurance Company ("Everest"), is a Delaware corporation with its principal place of business in Liberty Corner, New Jersey. Everest is authorized to sell insurance in the state of Florida and, on information and belief, is actively engaged in the business of selling insurance both in Hillsborough County and throughout the state of Florida.  Everest issued the subject insurance policy to Rooms To Go at Rooms To Go's principal address in Seffner, Florida.

11.     Defendant, Ironshore Specialty Insurance Company ("Ironshore"), is an Arizona corporation with its principal place of business in Boston, Massachusetts. Ironshore is authorized to sell insurance in the state of Florida and, on information and belief, is actively engaged in the business of selling insurance both in Hillsborough County and throughout the state of Florida.  Ironshore issued the subject insurance policy to Rooms To Go at Rooms To Go's principal address in Seffner, Florida.

12.     Defendant, HDI Global Specialty SE ("HDI"), is a German corporation with its principal place of business in New York, New York.  HDI is authorized to sell insurance in the state of Florida and, on information and belief, is actively engaged in the business of selling insurance both in Hillsborough County and throughout the state of Florida.  HDI issued the subject insurance policy to Rooms To Go at Rooms To Go's principal address in Seffner, Florida.

13.     Defendant, Underwriters at Lloyd's, London Subscribing to Policy No. LMPRP20928555 ("Hiscox"), is a British corporation with its principal place of business

in New York, New York.  Hiscox is authorized to sell insurance in the state of Florida and, on information and belief, is actively engaged in the business of selling insurance both in Hillsborough County and throughout the state of Florida.  Hiscox issued the subject insurance policy to Rooms To Go at Rooms To Go's principal address in Seffner, Florida.

14.     Defendant, PartnerRe Ireland Insurance dac ("PartnerRe"), is an Irish corporation with its principal place of business in Dublin, Ireland.  PartnerRe is authorized to sell insurance in the state of Florida and, on information and belief, is actively engaged in the business of selling insurance both in Hillsborough County and throughout the state of Florida.  PartnerRe issued the subject insurance policy to Rooms To Go at Rooms To Go's principal address in Seffner, Florida.

15.     Defendant, Starr Surplus Lines Insurance Company ("Starr"), is an Illinois corporation with its principal place of business in New York, New York.  Starr is authorized to sell insurance in the state of Florida and, on information and belief, is actively engaged in the business of selling insurance both in Hillsborough County and throughout the state of Florida.  Starr issued the subject insurance policy to Rooms To Go at Rooms To Go's principal address in Seffner, Florida.

16.     Defendant, Evanston Insurance Company ("Evanston"), is an Illinois corporation with its principal place of business in Rosemont, Illinois.  Evanston is authorized to sell insurance in the state of Florida and, on information and belief, is actively engaged in the business of selling insurance both in Hillsborough County and throughout the state of Florida.  Evanston issued the subject insurance policy to Rooms To Go at Rooms To Go's principal address in Seffner, Florida.

17.     Defendant, Aspen Specialty Insurance Company ("Aspen"), is a North Dakota corporation with its principal place of business in Rocky Hill, Connecticut.  Aspen is authorized to sell insurance in the state of Florida and, on information and belief, is actively engaged in the business of selling insurance both in Hillsborough County and throughout the state of Florida.  Aspen issued the subject insurance policy to Rooms To Go at Rooms To Go's principal address in Seffner, Florida.

18.     Defendant, Landmark American Insurance Company ("Landmark"), is an Oklahoma corporation with its principal place of business in Atlanta, Georgia.  Landmark is authorized to sell insurance in the state of Florida and, on information and belief, is actively engaged in the business of selling insurance both in Hillsborough County and throughout the state of Florida.  Landmark issued the subject insurance policy to Rooms To Go at Rooms To Go's principal address in Seffner, Florida.

19.     Defendant, Maxum Indemnity Company ("Maxum"), is a Delaware corporation with its principal place of business in Alpharetta, Georgia.  Maxum is authorized to sell insurance in the state of Florida and, on information and belief, is actively engaged in the business of selling insurance both in Hillsborough County and throughout the state of Florida.  Maxum issued the subject insurance policy to Rooms To Go at Rooms To Go's principal address in Seffner, Florida.

20.     Defendant, Homeland Insurance Company of New York ("Homeland"), is a New York corporation with its principal place of business in Plymouth, Minnesota. Homeland is authorized to sell insurance in the state of Florida and, on information and belief, is actively engaged in the business of selling insurance both in Hillsborough County

and throughout the state of Florida.  Homeland issued the subject insurance policy to Rooms To Go at Rooms To Go's principal address in Seffner, Florida.

## JURISDICTION AND VENUE

21.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332, as the matter in controversy exceeds $75,000 exclusive of interest and costs, and complete diversity of citizenship exists.

22.     This Court has personal jurisdiction over the Insurers because they: (1) are authorized insurers in the state of Florida, (2) generally transact business throughout the state of Florida, and (3) contracted to insure a Florida corporation with its principal place of business in this judicial district.  In addition, the Insurers agreed in the insurance policies to submit to personal jurisdiction in any court in which Rooms To Go elected to file suit.

23.     Venue is properly placed under 28 U.S.C. § 1391, as this is a diversity action in which a substantial part of the events or omissions giving rise to the claims and losses occurred in this judicial district.

## FACTUAL BACKGROUND

### Rooms To Go and the Spread of COVID-19

24.      Rooms To Go operates over 150 stores in Alabama, Florida, Georgia, Louisiana, Mississippi, North Carolina, South Carolina, Tennessee, Texas, and Virginia.

25.     To protect its business in the event of property loss or damage and business interruption, Rooms To Go purchased commercial property insurance policies from the Insurers incepting on March 1, 2020 (collectively, the "Policies").  These Policies compose a single insurance tower, with multiple insurers but identical substantive policy terms.

26.     The Policies insure against all risks of direct physical loss of or damage to property, as well as business interruption and extra expense, unless specifically excluded or limited.

27.     COVID-19 is an illness caused by the novel coronavirus, known as severe acute respiratory syndrome coronavirus 2 (SARS-CoV-2) (hereafter "coronavirus" or the "virus").

28.     As of this filing, approximately 7.2 million Americans have tested positive for COVID-19, countless more have been infected without confirmation, and roughly 200,000 Americans have died from the illness.[1]

29.     The virus can be transmitted by infected individuals whether or not they are symptomatic.

30.     Coronavirus is detectable on various types of surfaces for varying amounts of time.

31.     The CDC has reported that a person can become infected with COVID-19 by touching a surface or object that has the virus on it, and then touching their own mouth, nose, or eyes.

32.     The presence of coronavirus particles on Rooms To Go's physical property caused a loss of its usefulness and normal function.

33.     The presence of coronavirus particles caused direct physical harm, direct physical damage, and/or direct physical loss to Rooms To Go's property.

---

[1] See *https://coronavirus.jhu.edu/us-map* (last viewed September 30, 2020).

34.     The presence of people infected with or carrying COVID-19 on Rooms To Go's physical property caused a loss of its usefulness and normal function.

35.     The presence of people infected with or carrying COVID-19 on Rooms To Go's property caused direct physical harm, direct physical damage, and/or direct physical loss to Rooms To Go's property.

**The Stay at Home Orders**

36.     In an effort to combat the virus and slow the spread of COVID-19, state and local governments imposed directives requiring residents to remain in their homes unless performing "essential" activities ("Stay at Home Orders").

37.     In many instances, the Stay at Home Orders required Rooms To Go stores to close.

38.     These orders were issued because of the spread of COVID-19 and, in particular, the transmission of the virus through human contact with affected property.

39.     The orders were also issued because of direct physical loss of or damage to property.

40.     By way of example, Rooms To Go has several stores located in Broward County, Florida.  That county recognized that coronavirus causes physical injury or damage to property: The Stay at Home Orders are "necessary because of the propensity of [COVID-19] to spread person to person and also because the virus is physically causing property damage due to its proclivity to attach to surfaces for prolonged periods of time."[2]

---

[2] See March 22, 2020, Broward County Administrator's Emergency Order 20-01; March 26, 2020, Broward County Administrator's Emergency Order 20-03.

41.     Indeed, state and local governmental authorities and public health officials around the United States have acknowledged that coronavirus, COVID-19, and the pandemic cause direct physical loss and damage to property.  For example:

a.     The City of Miami issued orders stating that "[t]here is reason to believe that there exists a clear and present danger of substantial injury to health, safety, and welfare of persons or to property, all of which constitute an imminent threat to public peace and order and to the general welfare of this City . . ."[3]

b.     The State of Colorado issued an order indicating that "COVID-19 . . . physically contributes to property loss, contamination and damage . . . "

c.     The City of New York issued an order in response to coronavirus and the pandemic, in part "because the virus physically is causing property loss and damage."

d.     The State of Washington issued a proclamation stating that the "COVID-19 pandemic and its progression . . . remains a public disaster affecting life, health [and] property."

e.     The State of Indiana issued an order recognizing that coronavirus has the "propensity to physically impact surfaces and personal property."

---

[3] See March 12, 2020, City of Miami Notice of Emergency Measures; March 19, 2020, City of Miami Notice of Order No. 20-03, Declaration of Local Emergency Measures; March 24, 2020, City of Miami Notice of Order No. 20-04, Declaration of Local Emergency Measures; June 25, 2020, City of Miami Notice of Order No. 20-16, Declaration of Local Emergency Measures.

f.       The City of New Orleans issued an order stating "there is reason to believe that COVID-19 may spread amongst the population by various means of exposure, including the propensity to attach to surfaces for a prolonged period of time, thereby spreading from surface to person and causing property loss and damage in certain circumstances."

g.       The State of North Carolina issued an order in response to the pandemic not only "to assure adequate protection for lives" but also to "assure adequate protection of . . . property."

h.       The City of Los Angeles issued an order "because, among other reasons, the COVID-19 virus can spread easily from person to person and it is physically causing property loss or damage due to its tendency to attach to surfaces for prolonged periods of time."

42.     Civil authorities issued orders in every state where Rooms To Go operates stores, and many orders operated to prohibit access to Rooms To Go's stores and/or prohibit customers from patronizing the business.

43.     Certain Stay at Home Orders explicitly stated that furniture stores were not essential businesses, which required Rooms To Go to close stores in those locations.

44.     Furniture stores did not meet the criteria for an "essential business" under other Stay at Home Orders, which also required Rooms To Go to close stores in those locations.

45. The Stay at Home Orders resulted in direct physical loss of or damage to Rooms To Go's premises and property by denying use of and access to, and damaging, the covered property, and by causing a necessary suspension of operations.

46. Even where Rooms To Go was permitted to operate, its business volume and practices were impacted by this direct physical loss of or damage to property. For example, Rooms To Go had to limit the number of customers in some stores, purchase more sanitization products, reduce operational hours, and provide personal protective equipment to employees and customers.

47. The Stay at Home Orders caused a total or partial prohibition of access to Rooms To Go's stores. The Stay at Home Orders caused direct physical loss of or damage to property.

48. The Stay at Home Orders caused the necessary partial or total interruption of Rooms To Go's business operations.

49. The Stay at Home Orders caused direct physical loss or damage by denying use of and damaging Rooms To Go's property, thereby causing a suspension or significant decrease in operations and prohibiting access to premises.

50. The direct physical loss or damage caused by coronavirus and the Stay at Home Orders had an adverse effect on Rooms To Go's business.

## The "All Risks" Insurance Policies are Triggered

51. To protect its business in the event of property loss and business interruption, Rooms To Go purchased a tower of "manuscript" commercial property

insurance policies from the Insurers covering the Policy Period from March 1, 2020 through March 1, 2021.

52.     A "manuscript" policy is an insurance policy that is specifically tailored to and designed for an insured's business.  The policies may be organized into a "tower" that includes a number of insurers who agree to share the insured's risk.  Even though each insurer issues its own policy, the substantive provisions of each policy are identical. [4]

53.     Rooms To Go's manuscript insurance policy is an "all risks" policy, meaning that it provides coverage for *all risks* unless a certain risk is explicitly excluded.

54.     Rooms To Go's tower of insurance comprises fourteen policies.  The policies are organized in layers and each layer provides a defined limit of liability.  Further, each insurer in that layer is responsible for a certain percentage of the limit.  The layers and policies are organized as follows:

| Insurer | Policy No. |
|---|---|
| **First Layer** | |
| Hallmark Specialty Insurance Company | 73PRX20A4D8 |
| Crum & Forster Specialty Insurance Company | PPP-910725 |
| Ironshore Specialty Insurance Company | 1000383283-01 |
| HDI Global Specialty SE | PN306430o |
| Everest Indemnity Insurance Company | CA3X001302-201 |

---

[4] While each of Rooms To Go's insurers issued separate policies with different endorsements, the substantive terms of the manuscript policy that contains the relevant coverages are the same.  A copy of the policy issued by Hallmark Specialty Insurance Company – which reflects the manuscript form – is attached as Exhibit 1.

| Second Layer | |
|---|---|
| Underwriters at Lloyd's, London (Hiscox) | LMPRP20928555 |
| Starr Surplus Lines Insurance Company | 20SLCFM11077401 |
| PartnerRe Ireland Insurance dac | PN311040o |
| Everest Indemnity Insurance Company | CA3X001302-201 |
| Third Layer | |
| Evanston Insurance Company | MKLV11XP007922 |
| Aspen Specialty Insurance Company | PX00AUD20 |
| Landmark American Insurance Company | LHD911888 |
| PartnerRe Ireland Insurance dac | PN311040o |
| Fourth Layer | |
| Maxum Indemnity Company | MSP-6032580-03 |
| Homeland Insurance Company of New York | 795011852 |

55.     Section 21 of the policies sold by the Insurers is entitled "Perils Insured Against." It provides: "This Policy insures against *all* risks of direct physical loss of *or* damage to property described herein including general average, salvage, and all other

charges on shipments covered hereunder; except as hereafter excluded."  Policy, § 21 (emphasis added).[5]

56.      COVID-19, a highly contagious disease for which there is no known vaccine, is a peril not excluded under the Policies and therefore constitutes a covered peril.

57.      The Stay at Home Orders are a peril not excluded under the Policies, and therefore constitute a covered peril.

58.      The Policies expressly cover physical "loss" *or* "damage."  This necessarily means that either a "loss" or "damage" is required, and that "loss" is distinct from "damage."

59.      While "physical loss" and "physical damage" are not defined by the Policies, the plain and ordinary meaning of "physical" means "having material existence: perceptible especially through the senses and subject to the laws of nature."[6]  Further, "loss" encompasses "the act of losing possession" and "deprivation."[7]

60.      Coronavirus is a physical substance that can be active on inert physical surfaces, and may also be present in the air.

61.      Coronavirus attached to and deprived Rooms To Go of its property by making it unusable, resulting in direct physical loss to its premises and property.

---

[5] Because the Policies are substantively identical, citations to the "Policy" refer to any and all policies at issue in this litigation.
[6] Merriam-Webster, *www.merriam-webster.com/dictionary/physical* (last visited September 11, 2020).
[7] Merriam-Webster, *www.merriam-webster.com/dictionary/loss* (last visited September 11, 2020).

62.     Rooms To Go has accordingly suffered "direct physical loss" of property from coronavirus and the Stay at Home Orders.

63.     Rooms To Go also suffered "direct physical . . . damage to property" because of coronavirus.  Coronavirus causes physical damage to property because it is physically present on and attaches to objects and surfaces as described above.

64.     Indeed, Rooms To Go was forced to close certain stores upon learning that employees or customers who had visited the store tested positive for, or were displaying symptoms of, COVID-19.

65.     The ubiquitous nature of the pandemic further confirms that coronavirus and COVID-19 were present in Rooms To Go's stores.

66.     Indeed, the transmissibility of COVID-19 from people and objects is a primary consideration underlying the Stay at Home Orders.

67.     Rooms To Go has therefore suffered "direct physical loss of [and] damage to" its property from a covered peril commencing in March 2020.  There is a direct causal relationship between coronavirus and the loss.

68.     Rooms To Go's losses and damages are covered under multiple sections of the Policies, including those addressing (1) Business Interruption, (2) Extra Expense, (3) Contingent Business Interruption, (4) Civil Authority, (5) Ingress/Egress, and (6) Loss Adjustment Expenses.

A.      **Business Interruption Coverage**

69.     Section 10 of the Policies provides coverage for Business Interruption: "This Policy shall cover the loss resulting from necessary interruption of business

16

conducted by the Insured including all interdependent loss of earnings between or among companies owned or operated by the Insured caused by loss, damage, or destruction by any of the perils covered herein during the term of this policy to real and personal property as covered herein." Policy, § 10(a).

70.     Coronavirus and the Stay at Home Orders are "perils covered" by the Policies because they are or present "risks of direct physical loss of or damage to property described" in the Policies.

71.     The Policies further provide that "[i]n the event of such loss, damage or destruction this Company shall be liable for the ACTUAL LOSS SUSTAINED by the Insured resulting directly from such interruption of business . . ." Policy, § 10(a)(i).

72.     Rooms To Go's business operations were interrupted in March 2020 as a result of a peril covered by the Policies.  Rooms to Go's losses resulted from the necessary interruption of its business.

73.     Rooms To Go has sustained loss of business income and other insured losses as a result of the partial or total interruption of its business.

**B.    Extra Expense Coverage**

74.     Section 11 of the Policies provides coverage for Extra Expense: "The policy shall cover the necessary extra expense, as hereinafter defined, incurred by the Insured caused by loss, damage, or destruction by any of the perils covered herein during the term of this policy to real and personal property as covered herein."  Policy § 11.

75.     The Policies also provide coverage for the "expenses as are necessarily incurred for the purpose of reducing any loss under this policy . . ."  Policy, § 11.

76.     "Extra Expense" is "the excess (if any) of the total cost(s) incurred during the period of restoration, chargeable to the operation of the Insured's business, over and above the total cost(s) that would have normally been incurred to conduct the business during the same period had no loss or damage occurred."  Policy, § 11(a).

77.     Rooms To Go incurred substantial Extra Expense beginning in March 2020 as a result of a peril covered by the Policies.

78.     Rooms To Go has incurred covered Extra Expense as a result of the partial or total interruption of its business.

**C.     Contingent Business Interruption Coverage**

79.     Section 17 of the Policies insures against losses due to contingent business interruption: "This Policy . . . insures against loss resulting from damage to or destruction by the perils insured against, to . . . [p]roperty that directly or indirectly prevents a supplier . . . of goods and/or services to the Insured from rendering their goods and/or services, or property that prevents a receiver . . . of goods and/or services from receiving the Insured's goods and/or services; such supplier or receiver shall not be an Insured under this Policy." Policy, § 17(b).

80.     Rooms To Go's suppliers and customers have also suffered loss due to a covered peril that prevented suppliers from supplying their goods and/or services to Rooms To Go and customers from accepting Rooms To Go's goods and/or services.

81.     Rooms To Go has sustained loss of business income, incurred extra expense, and sustained other insured losses resulting from Rooms To Go's suppliers'

18

inability to supply their goods and services, and customers' inability to accept Rooms To Go's goods and services.

**D.    Civil Authority Coverage**

82.    Section 17 of the Policies insures against losses due to the actions of a civil authority, specifically "[t]he actual loss sustained during a period not to exceed sixty (60) consecutive days when, as a result of a peril insured against, access to real or personal property is prohibited by order of civil or military authority."  Policy, § 17(d).

83.    Beginning in March 2020, the Stay at Home Orders prohibited access to Rooms To Go's property.

84.    The Stay at Home Orders constituted orders by a civil authority.

85.    Rooms To Go has lost business income and incurred extra expense because of Stay at Home Orders that prohibited access to their stores, which are the result of a peril insured against under the Policies.

86.    Alternatively, the Stay at Home Orders themselves are a covered peril under the Policies whether or not they were issued in response to coronavirus or some other "direct physical loss or damage."

87.    Rooms To Go has sustained losses due to the Stay at Home Orders.

**E.    Ingress/Egress Coverage**

88.    Section 17 insures against losses due to hindered ingress or egress to property, specifically "[t]he actual loss sustained during a period not to exceed sixty (60) consecutive days when, as a result of a peril insured against, ingress to or egress from real

or personal property is thereby prevented or hindered irrespective of whether the property of the Insured shall have been damaged."  Policy § 17(e).

89.    Rooms To Go has lost business income and incurred extra expense because ingress or egress to its property was prevented or hindered as a result of a peril insured against under the Policies.  Coronavirus and the Stay at Home Orders prevented or hindered ingress to and egress from Rooms To Go's property.

**F.    Loss Adjustment Expenses**

90.    Section 44 of the Policies provides coverage for Loss Adjustment Expenses: "This policy is extended to include expenses incurred by the Insured, or by the Insured's representatives for preparing and certifying details of a claim resulting from a loss which would be payable under this policy.  These expenses include fees of professionals engaged to assist the Insured in determining the cause and origin of the loss, the amount of loss sustained, and the amount of loss payable under this policy.  This policy shall not cover the expenses of a public adjuster and cost of attorneys."

91.    Rooms To Go has incurred and will incur expenses in connection with calculating and determining the amount payable under the Policies and the presentation of Rooms To Go's claim to the Insurers.

92.    These expenses are covered under the Policies' Loss Adjustment Expenses coverage section.

**At Worst, "Direct Physical Loss . . . or Damage" is Ambiguous, Triggering Coverage**

93.    Rooms To Go's Insurers have refused to acknowledge that coronavirus constitutes "direct physical loss of or damage to property."

20

94.     Notwithstanding this refusal, at least one federal court has already concluded that coronavirus meets this requirement and is sufficient to trigger coverage for the associated business interruption for which Rooms To Go now seeks to recover.  *See Studio 417, Inc. v. The Cincinnati Ins. Co.*, No. 20-cv-03127-SRB, 2020 WL 4692385 (W.D. Mo. Aug. 12, 2020).

95.     The *Studio 417* court specifically found that coronavirus, as a physical substance that can attach to and deprive a policyholder of its property by making it unusable, may constitute a "direct physical loss" based on the plain and ordinary meaning of the phrase.

96.     The court's holding in *Studio 417* establishes that a reasonable reading of the phrase "direct physical loss" encompasses the risk of loss caused by coronavirus.

97.     Even if the Insurers maintain that the opposite conclusion is also a reasonable interpretation, this Court is bound to adopt the interpretation that results in coverage for the policyholder.

98.     Under Florida law, policy language is considered ambiguous if it is susceptible of two or more reasonable interpretations.

99.     Ambiguities are automatically construed in favor of the insured.

100.    The court's holding in *Studio 417* is *prima facie* evidence that Rooms To Go's interpretation of the policy language is reasonable, which requires a finding of coverage regardless of any alternative interpretation proffered by the Insurers.

### No Exclusions Apply to Bar Coverage

101.     The Insurers issued "All Risk" insurance policies, meaning it was incumbent on the Insurers to clearly, unambiguously, and expressly exclude any peril that is not covered under the Policies.

102.     Rooms To Go purchased these Policies in March 2020 at a time when coronavirus was actively spreading around the world.  As early as January 30, 2020, the World Health Organization declared the coronavirus outbreak a public health emergency of international concern.  Despite being well aware of the virus and disease, and their effects, the Insurers did not exclude this peril from Rooms To Go's coverage.

103.     The presence of virus or disease can constitute physical loss of or damage to property, as the insurance industry has recognized since at least 2006.  During that year, the Insurance Services Office ("ISO"), an insurance industry organization that develops standardized policy forms for use by insurers, drafted a specific form exclusion for losses "due to disease-causing agents such as viruses and bacteria."  When preparing so-called "virus" exclusions to be placed in some policies, ISO presented the exclusion to state insurance regulators around the country with the following explanation:

> Disease-causing agents may render a product impure (change its quality or substance) or enable the spread of disease by their presence on interior building surfaces or the surfaces of personal property.  When disease-causing viral or bacterial contamination occurs, potential claims involve the cost of replacement of property (for example, the milk), cost of decontamination (for example, interior building surfaces), and business interruption (time element) losses. Although building and personal property could arguably become contaminated (often temporarily) by such viruses and bacteria, the nature of the property itself would have a bearing on

whether there is actual property damage.  An allegation of property damage may be a point of disagreement in a particular case.[8]

104.    ISO also created a new and specific "amendatory endorsement" to exclude loss due to virus or bacteria from coverage afforded by certain insurance policies.  The ISO amendatory endorsement states that there is "no coverage for loss or damage caused by or resulting from any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease" (the "Virus Exclusion").

105.    Even though the Policies contain other ISO forms, the Insurers did not add the ISO's specific Virus Exclusion or amendatory endorsement to Rooms To Go's Policies.

106.    As an alternative to ISO's Virus Exclusion, some insurers have included manuscript amendatory endorsements in their policies to expressly exclude coverage for loss or damage resulting from COVID-19 or SARS-CoV-2.  Once again, the Insurers did not add such an exclusion to Rooms To Go's Policies.

107.    The Policies similarly do not contain a specific pandemic exclusion even though the Insurers could have included such an exclusion in the Policies.

108.    Due to the existence and globally visible impact of coronavirus and COVID-19 at the time the Insurers issued these Policies, the Insurers had the opportunity to clearly, unambiguously, and expressly exclude coverage for the present losses through standard insurance industry forms or manuscript language.  They chose not to do so.

---

[8] ISO Circular, July 6, 2006, LI-CF-2006-175.

109.    Instead, the Policies simply contain a common Pollution and Contamination Exclusion that is directed at risks distinct from the physical loss and damage at issue (the "Pollution Exclusion").

110.    The Pollution Exclusion here is a traditional environmental pollution exclusion that requires "the actual, alleged or threatened release, discharge, escape or dispersal of Contaminants or Pollutants."  The presence of coronavirus at any Rooms To Go properties was not the result of any "release, discharge, escape or dispersal," thereby rendering the exclusion inapplicable in the first instance.

111.    Further, the definition of Pollutants or Contaminants that is incorporated into the exclusion is expressly limited to substances that are "release[d]."  Coronavirus is a pandemic that is ubiquitous and globally present; it was not "release[d]" onto Rooms To Go's properties as that term is plainly and ordinarily understood.

112.    Finally, the Pollution Exclusion contains an express exception that states: "This exclusion shall not apply when loss or damage is directly caused by a covered peril not otherwise excluded."  Because coronavirus is a covered peril that (1) has directly caused physical loss or damage to Rooms To Go's property, and (2) is not otherwise excluded by any other provision in the Policies, it would be subject to the Pollution Exclusion's exception even if the exclusion otherwise applied.

113.    None of the other exclusions cited by the Insurers operates to bar coverage. These exclusions are entirely unrelated to coronavirus, COVID-19, or the pandemic, and were not included or intended to address the risk(s) for which Rooms To Go now seeks coverage.

114.    Indeed, this judicial district has recognized that it would be inappropriate to deny coverage for losses stemming from COVID-19 when insurers attempt to shoehorn such losses into exclusions that are not intended for these circumstances.  *Urogynecology Specialist of Fla. LLC v. Sentinel Ins. Co., Ltd.*, No. 6:20-cv-0117 (M.D. Fla. Sept. 24, 2020).

115.    Neither the Pollution Exclusion nor any other exclusion in the Policies applies to Rooms To Go's insurance claim.

### The Insurers' Failure or Refusal to Acknowledge Coverage

116.    In early April 2020, shortly after Rooms To Go began incurring covered losses, it promptly provided notice to the Insurers and made a claim under the Policies.

117.    A single adjuster has been appointed to handle Rooms To Go's claim, and is responsible for communicating a single, uniform, collective coverage position on behalf of all the Insurers.

118.    On June 10, 2020, Rooms To Go received a single reservation of rights letter directly from one insurer (Hallmark), which spoke only for itself and not for all Insurers in the tower.

119.    For nearly six months after Rooms To Go first reported its claim, the adjuster and the Insurers failed or refused to collectively reserve their rights, communicate a coverage position, take any action regarding the claim, or acknowledge coverage under the Policies.

120.     Finally, on September 25, 2020, the adjuster sent Rooms To Go a reservation of rights letter on behalf of the Insurers, who collectively refused to acknowledge any coverage obligation under their Policies.

121.     The Insurers are well-apprised of the business interruption caused by coronavirus and COVID-19 and, upon information and belief, have collectively refused to acknowledge coverage for any such claims arising from the pandemic.

122.     The Insurers' failure or refusal to acknowledge coverage or make any payment under the Policies constitutes a breach of contract for which Rooms To Go has been damaged.

### Compliance with All Conditions Precedent

123.      Room To Go has satisfied all the applicable terms, conditions, and other requirements of the Policies.   Alternatively, compliance with the applicable terms, conditions, and other requirements in whole or in part has been waived, excused, or is unnecessary for other reasons.

### Retention of Counsel

124.     Rooms To Go has retained the law firms of Hunton Andrews Kurth LLP and Bondurant Mixson & Elmore LLP to represent Rooms To Go in this action and has agreed to pay reasonable attorneys' fees, plus all expenses incurred, for their services.

### COUNT I – BREACH OF CONTRACT
### (Business Interruption and Extra Expense Coverage)

125.     Rooms To Go repeats and re-alleges the allegations in the preceding paragraphs as if set forth herein.

126.    The Policies are valid and enforceable contracts between Rooms To Go and the Insurers.

127.    In the Policies, the Insurers promised to pay for losses of business income and extra expense incurred as a result of covered losses.

128.    Coronavirus and the Stay at Home Orders have caused direct physical loss of or damage to Rooms To Go's property and the property of those upon whom Rooms To Go relies.

129.    Because of the direct physical loss of or damage to property, Rooms To Go experienced a slowdown or cessation of its business.

130.    These slowdowns and cessations trigger the Policies' Business Interruption and Extra Expense Coverages.

131.    Rooms To Go has complied with all applicable provisions in the Policies.

132.    Nonetheless, the Insurers have, in breach of the Policies, refused to pay for Rooms To Go's losses and expenses.  Defendants have breached Sections 10, 11 and 21 of the Policies, among other provisions.

133.    Rooms To Go has suffered damages as a result of the Insurers' breaches of their respective Policies.

134.    As a direct, proximate, and natural result of the Insurers' breaches, Rooms To Go has been deprived of the benefits due under the Policies.

WHEREFORE, Plaintiff Rooms To Go demands judgment against the Defendants for damages, pre- and post-judgment interest, attorneys' fees pursuant to Fla. Stat. § 627.428, costs, and any further relief this Court deems equitable, just and proper.

## COUNT II – BREACH OF CONTRACT
### (Contingent Business Interruption Coverage)

135.    Rooms To Go repeats and re-alleges the allegations in the preceding paragraphs as if set forth herein.

136.    The Policies are valid and enforceable contracts between Rooms To Go and the Insurers.

137.    In the Policies, the Insurers extended the time element coverage and promised to pay for losses of business income and extra expense incurred as a result of an insured peril that directly or indirectly prevents a supplier of goods and/or services from rendering those goods and/or services to Rooms To Go.

138.    In the Policies, the Insurers extended the time element coverage and promised to pay for losses of business income and extra expense incurred as a result of an insured peril that directly or indirectly prevents a receiver of goods and/or services from receiving those goods and/or services from Rooms To Go.

139.    Coronavirus and the Stay at Home Orders have caused loss of or damage to property that directly or indirectly prevented Rooms To Go's suppliers from rendering their goods and/or services to Rooms To Go.

140.    Coronavirus and the Stay at Home Orders have caused direct physical loss of or damage to property that directly or indirectly prevented Rooms To Go's receivers of goods and/or services from receiving goods and/or services from Rooms To Go.

141.    Because of this direct physical loss of or damage to property due to an insured peril, Rooms To Go experienced a slowdown or cessation of its business.

142.    These slowdowns or cessations trigger the Policies' extended time element coverage for contingent business interruption.

143.    Rooms To Go has complied with all applicable provisions in the Policies.

144.    Nonetheless, the Insurers have, in breach of the Policies, refused to pay for Rooms To Go's losses and expenses in breach of the Policies.  Defendants have breached Section 17(b) of the Policies, among other provisions.

145.    Rooms To Go has suffered damages as a result of the Insurers' breaches of their respective Policies.

146.    As a direct, proximate, and natural result of the Insurers' breaches, Rooms To Go has been deprived of the benefits due under the Policies.

WHEREFORE, Plaintiff Rooms To Go demands judgment against the Defendants for damages, pre- and post-judgment interest, attorneys' fees pursuant to Fla. Stat. § 627.428, costs, and any further relief this Court deems equitable, just and proper.

## COUNT III – BREACH OF CONTRACT
### (Civil Authority Coverage)

147.    Rooms To Go repeats and re-alleges the allegations in the preceding paragraphs as if set forth herein.

148.    The Policies are valid and enforceable contracts between Rooms To Go and the Insurers.

149.    In the Policies, the Insurers extended the time element coverage and promised to pay for losses of business income and extra expense incurred as a result of civil authority orders that prohibit access to Rooms To Go's premises.

150.    Rooms To Go has experienced a loss under the Policies' civil authority coverage arising from coronavirus and the Stay at Home Orders.

151.    These actions, losses, and expenses triggered civil authority coverage under the Policies.

152.    Rooms To Go has complied with all applicable provisions in the Policies.

153.    Nonetheless, the Insurers have, in breach of the Policies, refused to pay for Rooms To Go's losses and expenses in breach of the Policies.  Defendants have breached Section 17(d) of the Policies, among other provisions.

154.    Rooms To Go has suffered damages as a result of the Insurers' breaches of their respective Policies.

155.    As a direct, proximate, and natural result of the Insurers' breaches, Rooms To Go has been deprived of the benefits due under the Policies.

WHEREFORE, Plaintiff Rooms To Go demands judgment against the Defendants for damages, pre- and post-judgment interest, attorneys' fees pursuant to Fla. Stat. § 627.428, costs, and any further relief this Court deems equitable, just and proper.

## COUNT IV – BREACH OF CONTRACT
### (Ingress/Egress Coverage)

156.    Rooms To Go repeats and re-alleges the allegations in the preceding paragraphs as if set forth herein.

157.    The Policies are valid and enforceable contracts between Rooms To Go and the Insurers.

158.    In the Policies, the Insurers extended the time element coverage and promised to pay for losses of business income and extra expense when, as a result of an insured peril, ingress to or egress from real or personal property is prevented or hindered.

159.    Rooms To Go has experienced a loss under the Policies' ingress/egress coverage arising from coronavirus and the Stay at Home Orders.

160.    These actions, losses, and expenses triggered the ingress/egress coverage under the Policies.

161.    Rooms To Go has complied with all applicable provisions in the Policies.

162.    Nonetheless, the Insurers have, in breach of the Policies, refused to pay for Rooms To Go's losses and expenses in breach of the Policies.  Defendants have breached Section 17(e) of the Policies, among other provisions.

163.    Rooms To Go has suffered damages as a result of the Insurers' breaches of their respective Policies.

164.    As a direct, proximate, and natural result of the Insurers' breaches, Rooms To Go has been deprived of the benefits due under the Policies.

WHEREFORE, Plaintiff Rooms To Go demands judgment against the Defendants for damages, pre- and post-judgment interest, attorneys' fees pursuant to Fla. Stat. § 627.428, costs, and any further relief this Court deems equitable, just and proper.

## COUNT V– BREACH OF CONTRACT
### (Loss Adjustment Expenses Coverage)

165.    Rooms To Go repeats and re-alleges the allegations in the preceding paragraphs as if fully set forth herein.

166.    The Policies are valid and enforceable contracts between Rooms To Go and the Insurers.

167.    In the Policies, the Insurers promised to pay for Rooms To Go's loss adjustment expenses for preparing and certifying details of a claim resulting from a loss that is payable under the Policies.

168.    Rooms To Go has experienced a covered loss under the Policies, and Rooms To Go has incurred and/or will incur expenses in connection with calculating and determining the amount payable under the Policies and the presentation of Rooms To Go's claim to the Insurers.

169.    These expenses trigger the Loss Adjustment Expenses coverage under the Policies.

170.    Rooms To Go has complied with all applicable provisions in the Policies.

171.    Nonetheless, the Insurers have, in breach of the Policies, refused to pay for Rooms To Go's losses and expenses in breach of the Policies.  Defendants have breached Section 44 of the Policies, among other provisions.

172.    Rooms To Go has suffered damages as a result of the Insurers' breaches of their respective Policies.

173.    As a direct, proximate, and natural result of the Insurers' breaches, Rooms To Go has been deprived of the benefits due under the Policies.

WHEREFORE, Plaintiff Rooms To Go demands judgment against the Defendants for damages, pre- and post-judgment interest, attorneys' fees pursuant to Fla. Stat. § 627.428, costs, and any further relief this Court deems equitable, just and proper.

## COUNT VI – DECLARATORY JUDGMENT

174.    Rooms To Go repeats and re-alleges the allegations in the preceding paragraphs as if fully set forth herein.

175.    Rooms To Go seeks the Court's declaration of the parties' rights and duties under the Policies pursuant to 28 U.S.C. § 2201.

176.    A justiciable controversy exists between Rooms To Go and the Insurers about whether the Policies provide coverage for Rooms To Go's claim.

177.    The controversy between Rooms To Go and the Insurers is ripe for judicial review.

178.    Accordingly, Rooms To Go seeks a declaration from the Court that:

a.      The various coverage provisions identified above are triggered by Rooms To Go's claim; and

b.      No exclusion applies to bar or limit coverage for Rooms To Go's claim.

WHEREFORE, Plaintiff Rooms To Go demands judgment against the Defendants for damages, pre- and post-judgment interest, attorneys' fees pursuant to Fla. Stat. § 627.428, costs, and any further relief this Court deems equitable, just and proper.

## JURY DEMAND

Rooms To Go hereby demands trial by jury.

Dated: October 2, 2020                HUNTON ANDREWS KURTH LLP

                                      */s/ Walter J. Andrews*
                                      Walter J. Andrews - Trial Counsel
                                      Fla. Bar No. 84863
                                      Cary D. Steklof
                                      Fla. Bar No. 86257
                                      HUNTON ANDREWS KURTH LLP
                                      1111 Brickell Avenue, Suite 2500
                                      Miami, Florida 33131
                                      Tel: (305) 810-6407
                                      Facsimile: (305) 810-2460
                                      wandrews@HuntonAK.com
                                      csteklof@HuntonAK.com


                                      BONDURANT MIXSON & ELMORE, LLP

                                      */s/ Frank M. Lowrey*
                                      Frank M. Lowrey IV (*pro hac vice
                                      forthcoming*)
                                      Georgia Bar No. 410310
                                      lowrey@bmelaw.com
                                      Joshua F. Thorpe (*pro hac vice forthcoming*)
                                      Georgia Bar No. 710665
                                      thorpe@bmelaw.com
                                      BONDURANT MIXSON & ELMORE, LLP
                                      1201 West Peachtree Street, N.E., Suite 3900
                                      Atlanta, Georgia 30309
                                      Tel: (404) 881-4100
                                      Facsimile: (404) 881-4111

                                      *Attorneys for Plaintiff, R.T.G. Furniture Corp.*

34