UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

R.T.G. FURNITURE CORP.,

    Plaintiff,

v.                                                   Case No: 8:20-cv-2323-T-30AEP

HALLMARK SPECIALITY
INSURANCE COMPANY, et al.,

    Defendants.

## ORDER

THIS CAUSE is before the Court on Defendants' Motion to Dismiss (Dkt. 36) and Plaintiff's Response in Opposition (Dkt. 43). Upon review of these filings, and upon being otherwise advised in the premises, the Court concludes that Defendants' motion should be granted because Plaintiff has not adequately alleged direct physical loss or damage to the subject property. The Court also concludes that amendment would be futile. Accordingly, the complaint will be dismissed with prejudice.

## BACKGROUND

Plaintiff R.T.G. Furniture Corp. and its affiliates ("RTG") operate over 150 furniture stores in ten states. Over the course of the COVID-19 pandemic, the presence of the coronavirus on RTG's property forced it to close stores. Stay-at-home orders ("SHO") issued by government entities also forced store closures. RTG purchased insurance policies (the "Policies") from Defendants (the "Insurers") that insure "against all risks of direct physical loss of or damage to property." (Dkt. 1-1 § 21). According

to the Complaint, Defendants have denied RTG's insurance claims, although RTG's losses trigger business interruption and other coverages in the Policies. Specifically, the Complaint alleges RTG's losses are covered under the following sections of the Policies: (1) Business Interruption and Extra Expense; (2) Contingent Business Interruption; (3) Civil Authority; (4) Ingress/Egress; and (5) Loss Adjustment Expenses.

According to Defendants, the subject policies require "direct physical loss of or damage to property" for each of the coverages. The Policies state, in relevant part:

> 21. PERILS INSURED AGAINST
> This policy Insures against all risks of **direct physical loss of or damage** to property described herein including general average, salvage, and all other charges on shipments covered hereunder; except as hereafter excluded.

(Dkt. 1-1, p. 24 ¶ 21) (emphasis added).

Defendants move to dismiss the entirety of the Complaint for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Defendants' main argument is that the Policies do not cover RTG's claims because RTG has not alleged direct physical loss or damage to the Property. The Court agrees.

## STANDARD OF REVIEW

Rule 12(b)(6) allows a complaint to be dismissed for failure to state a claim on which relief can be granted. When reviewing a motion to dismiss, courts must limit their consideration to the well-pleaded allegations, documents central to or referred to in the complaint, and matters judicially noticed. *See La Grasta v. First Union Securities, Inc.*, 358 F.3d 840, 845 (11th Cir. 2004) (internal citations omitted); *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005). Furthermore, they must accept all factual allegations

contained in the complaint as true and view the facts in a light most favorable to the plaintiff. *See Erickson v. Pardus*, 551 U.S. 89, 93–94 (2007).

Legal conclusions, though, "are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2009). In fact, "conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal." *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003). To survive a motion to dismiss, a complaint must instead contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (internal quotation marks and citations omitted). This plausibility standard is met when the plaintiff pleads enough factual content to allow the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (internal citations omitted).

## DISCUSSION

Under Florida law, the interpretation of an insurance contract, including resolution of any ambiguities contained therein, is a question of law to be decided by the court. *Dahl–Eimers v. Mutual of Omaha Life Ins. Co.*, 986 F.2d 1379, 1381 (11th Cir. 1993) (citing *Sproles v. Amer. States Ins. Co.*, 578 So. 2d 482, 484 (Fla. 5th DCA 1991)). In construing an insurance contract, a court must strive to give every provision meaning and effect. *Auto-Owners Ins. Co. v. Anderson*, 756 So. 2d 29, 34 (Fla. 2000); *Excelsior Ins. Com. v. Pomona Park Bar & Package Store*, 369 So. 2d 938, 941 (Fla. 1979). A party claiming coverage bears the burden of proof to establish that coverage exists. *U.S. Liab. Ins. Co. v. Bove*, 347 So. 2d 678, 680 (Fla. 3rd DCA. 1977). The Florida Supreme Court

has noted that an "all-risk" policy—like the Policies at issue in this case—is not an "all loss policy, and thus does not extend coverage for every conceivable loss." *Sebo v. Am. Home Assurance Co.*, 208 So. 3d 694, 696-97 (Fla. 2016) (citation omitted).

In *Infinity Exhibits, Inc. v. Certain Underwriters at Lloyd's London Known as Syndicate PEM 4000*, No. 8:20-CV-1605-T-30AEP, 2020 WL 5791583, at *5 (M.D. Fla. Sept. 28, 2020), this Court (in agreeing with the majority of courts—both in Florida and across the country—) concluded that COVID-19 and governmental orders closing businesses as a result of COVID-19 did not cause physical loss of or damage to property. The damages were purely economic in nature—they were not tangible or actual. The Court dismissed the insured's complaint with prejudice because the subject insurance policy required physical loss of or damage to the insured's property. *Id.*

Since the Court's Order in *Infinity Exhibits*, numerous courts have followed suit and dismissed similar complaints with prejudice for failure to adequately allege a physical loss. *See, e.g.*, *Uncork and Create LLC v. The Cincinnati Ins. Co.*, No. 2:20-cv-00401, 2020 WL 6436948, at *4 (S.D. W.Va. Nov. 2, 2020) (collecting cases). For the sake of brevity, the Court incorporates the analysis it applied in *Infinity Exhibits* in this Order. *See* 2020 WL 5791583.

RTG argues in a persuasively written Response[1] that the instant case differs from the "vast majority" of the cases to consider this issue, including *Infinity Exhibits*, because RTG's Complaint expressly alleges that the coronavirus was *present* on its property and therefore caused physical damage to its property.  RTG is correct that this is an important distinction and this distinction was not present in *Infinity Exhibits*.  To understand RTG's argument, the Court delineates the relevant allegations from RTG's Complaint:

> 30. Coronavirus is detectable on various types of surfaces for varying amounts of time.
>
> 31. The CDC has reported that a person can become infected with COVID-19 by touching a surface or object that has the virus on it, and then touching their own mouth, nose, or eyes.
>
> 32. The presence of coronavirus particles on Rooms To Go's physical property caused a loss of its usefulness and normal function.
>
> 33. The presence of coronavirus particles caused direct physical harm, direct physical damage, and/or direct physical loss to Rooms To Go's property.
>
> 34. The presence of people infected with or carrying COVID-19 on Rooms To Go's physical property caused a loss of its usefulness and normal function.
>
> 35. The presence of people infected with or carrying COVID-19 on Rooms To Go's property caused direct physical harm, direct physical damage, and/or direct physical loss to Rooms To Go's property.

After considering these additional facts and reviewing the relevant case law, the Court concludes that the mere presence of the coronavirus on RTG's property does not

---

[1] The Court commends the parties on the quality of their briefing.  The arguments were well-written, persuasive, and the legal research was thorough.

constitute physical damage or loss. This is because COVID-19's presence on property is temporal. In other words, COVID-19's temporary physical presence on RTG's property is insufficient to constitute "direct physical loss of or damage to" property.

*Mama Jo's Inc. v. Sparta Insurance Co*, which the Court discussed in more detail in *Infinity Exhibits*, is instructive. The Eleventh Circuit found no "direct physical loss" where the insured alleged that dust and debris physically intruded into the plaintiff's restaurant requiring temporary closures of the restaurant for daily cleanings. 823 F. App'x 868, 871-72, 879-80 (11th Cir. 2020). "[A]n item or structure that merely needs to be cleaned," the Eleventh Circuit held, "has not suffered a 'loss' which is both 'direct' and physical.'" *Id.* at 879. RTG is correct that *Mama Jo's* was decided at the summary judgment stage, not on a motion to dismiss. But this distinction is not material here because common sense tells us that COVID-19 is incapable of causing a tangible injury to property. COVID-19 is a virus that harms people, not structures. Discovery in this case would not alter this basic point.

Courts have reached a similar conclusion in COVID-19 business interruption cases that involve allegations that COVID-19 was present on the insured's property. For example, in *DAB Dental PLLC v. Main Street America Protection Ins. Co.*, the court held that "the mere presence of COVID-19 does not constitute a direct physical loss or damage to property," and entered a dismissal with prejudice because "[a]mendment would be futile under the circumstances." (Dkt. 36 at Ex. 14; No. 20-CA-005504 H, at 5–6, 8 & n.8 (Fla. Cir. Ct. Nov. 10, 2020) (distinguishing and declining to follow *Studio 417, Inc. v.*

*Cincinnati Ins. Co.*, No. 20-cv-03127-SRB, 2020 WL 4692385 (W.D. Mo. Aug. 12, 2020)).

Out of all the cases the Court has reviewed, the Court finds the following analysis from *Uncork and Create* the most persuasive:

> [E]ven when present, COVID-19 does not threaten the inanimate structures covered by property insurance policies, and its presence on surfaces can be eliminated with disinfectant. Thus, even actual presence of the virus would not be sufficient to trigger coverage for physical damage or physical loss to the property. Because routine cleaning, perhaps performed with greater frequency and care, eliminates the virus on surfaces, there would be nothing for an insurer to cover, and a covered "loss" is required to invoke the additional coverage for loss of business income under the Policy.

2020 WL 6436948 at *5. Similarly, in *Sandy Point Dental, PC v. The Cincinnati Insurance Co.*, the court concluded that "[t]he coronavirus does not physically alter the appearance, shape, color, structure, or other material dimension of the property." No. 20-CV-2160, 2020 WL 5630465, at *2 & n.2 (N.D. Ill. Sept. 21, 2020) (declining to follow *Studio 417*, 2020 WL 4692385, at *1). Therefore, the insured "failed to plead a direct physical loss—a prerequisite for coverage." *Id*.

In sum, the Court, as it stated in *Infinity Exhibits*, is sympathetic to RTG's losses. Numerous businesses have suffered significant economic losses as a result of the COVID-19 pandemic. But the Court must apply the law, no matter how inequitable or unfair it may seem to the losing side. The Court concludes that, even assuming coronavirus was physically present on RTG's property, it is not tantamount to a "direct physical loss of or damage to property." COVID-19 impacts human health and human behavior. COVID-19 does not impact physical structures, other than to require additional cleaning and

7

sanitizing of those structures. Therefore, all of the claims in the Complaint must be dismissed with prejudice. Amendment would be futile under these circumstances.

It is therefore ORDERED AND ADJUDGED that:

1. Defendants' Motion to Dismiss (Dkt. 36) is granted.

2. Defendants' Motion for Leave to File a Reply (Dkt. 44) is denied as moot.

3. The Complaint is dismissed with prejudice.

4. The Clerk of Court is directed to close this case and terminate any pending motions as moot.

**DONE** and **ORDERED** in Tampa, Florida, this January 22, 2021.

JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Counsel/Parties of Record